_____



**SO ORDERED,**

*Edward Ellington*

**Judge Edward Ellington**
**United States Bankruptcy Judge**
**Date Signed: June 23, 2016**

The Order of the Court is set forth below. The docket reflects the date entered.
_____

### IN THE UNITED STATES BANKRUPTCY COURT FOR THE
### SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| **IN RE:** | **CHAPTER 7** |
| **KENNETH HARLAN JENKINS** | **CASE NO. 1401542EE** |
| | |
| **TRUSTMARK NATIONAL BANK** | |
| | |
| **VS.** | **ADVERSARY NO. 1400053EE** |
| | |
| **KENNETH HARLAN JENKINS** | |

Hon. Stephanie Rippee                                   Attorneys for Trustmark National Bank
srippee@watkinseager.com
Hon. Jim F. Spencer, Jr.
jspencer@watkinseager.com
Watkins & Eager PLLC
Post Office Box 650
Jackson, MS 39201-0650

Hon. Larry Spencer
spencer@kingandspencer.net
King & Spencer, Attorneys
Post Office Box 123
Jackson, MS 39205-0123

Hon. Thomas Carl Rollins, Jr.                           Attorney for Debtor
trollins@therollinsfirm.com
The Rollins Law Firm, PLLC
774 Avery Boulevard North
Ridgeland, MS 39157

Mr. Stephen Smith                                                                                                 Chapter 7 Trustee
1855 Crane Ridge Drive, Suite D
Jackson, MS 39216


Edward Ellington, Judge


**FINDINGS OF FACT AND CONCLUSIONS OF LAW
ON THE *SECOND AMENDED COMPLAINT TO DETERMINE
DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523***

**THIS MATTER** came before the Court for the trial on the *Second Amended Complaint to Determine Dischargeability of Debt Pursuant to 11 U.S.C. § 523* (Adv. Dkt. #45) filed by Trustmark National Bank and the *Second Amended Answer* (Adv. Dkt. #46) filed by Kenneth Harlan Jenkins. After considering same, the evidence presented at trial and the post-trial briefs, the Court finds that the *Second Amended Complaint to Determine Dischargeability of Debt Pursuant to 11 U.S.C. § 523* is well taken and should be granted as discussed below.

**FINDINGS OF FACTS**[1]

On December 26, 2007, Kenneth Harlan Jenkins d/b/a Metro Equipment (Debtor) signed a *Promissory Note* (Note) with Heritage Banking Group (Heritage) in which Heritage agreed to loan the Debtor $100,070.00. The Note provided for sixty (60) monthly loan payments in the amount of $2,041.04, beginning on January 25, 2008. Listed on the Note as security are the following pieces of equipment: "ONE MUNICIPAL LEAF/DEBRIS MANAGEMENT SYSTEM*CONCRETE

---

[1]These findings of fact and conclusions of law constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. To the extent any of the following findings of fact are determined to be conclusions of law, they are adopted, and shall be construed and deemed, conclusions of law. To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted, and shall be construed and deemed, as findings of fact.

CURBING MACHINERY*ONE E-Z GOLF CART W/CANOPY*ONE JOHN DEERE MULE*ONE GOOSE NECK LAWN TRAILER*ONE PORTABLE GENERATOR/WELDER."[2]

In order to secure the Note, the Debtor also entered into a *Commercial Security Agreement* (Security Agreement) with Heritage on December 26, 2007. Attached as *Exhibit A* to the Security Agreement is the same list of equipment as on the Note, however, the list attached to the Security Agreement has more detail. *Exhibit A* to the Security Agreement states the following:

See Next Page

---

[2]Trial Exhibit P-1.

**Janiak Manufacturing**
Giant-Vac        SN# 112207010
Municipal Model Leaf and Debris management system
Model: TLR3510    49HP John Deere Diesel Engine
10 cubic yard debris box

Can get serial # once approval, delivery in January.

**Tygar Manufacturing**
Concrete curbing machinery        TCM4482
Model: TG1000
Bed edger Model: F-781
Mixer Model: 1290
(This Package unit has a $5,000.00 Discount if I can commit to purchase before 12/30/07, Price reflects discounted pricing, will increase after the 30th.?
Can get serial # once approval, delivery ASAP.

**E-Z Go Golf Cart with Charger and Canopy        $**
Model J303
Serial #: 2030156

On site at shop.

**Mule**
Pricing out 3 sources best price so far.  (In stock)    John Deer HPX
                                                        MoHpG46X40952

**Goose Kneck Lawn Trailer**        SUR-Pul 4298720K
From Deviney (In Stock)

**Portable Generator/Welder**
**50,000 Kw**
Therma Arc 5000
SN: 94279604C

Total                                        $

Trial Exhibit P-2 (Collectively, Equipment List).

At some point, the Debtor gave Heritage the same Equipment List with values of each piece

of equipment either typed or handwritten next to each item.[3] (Trial Tr. at 25). (This list was introduced at trial as Trial Exhibit P-7.) Heritage perfected its security interest in the Equipment with the filing of a *UCC Financing Statement* on December 27, 2007.[4]

The Debtor received a check on December 26, 2007, in the amount of $100,000.00. Trial Exhibit P-2.

Because of a slow-down in the Debtor's landscaping business, the Debtor formally requested on December 15, 2009, that Heritage modify the terms of the Note in order to lower his monthly payments. In December of 2009, the balance of the Note was $68,241.06. Heritage agreed to modify the terms of the Note. The Equipment List attached to the Note is also attached to the *Request for Note Extension.*[5]

On March 15, 2010, the Debtor executed a *Loan Extension/Modification Agreement* (Loan Modification). The Loan Modification lowered the interest rate and extended the term of the Note to eighty-four months.[6]

At some point after the Loan Modification was entered into by the parties, the Federal Deposit Insurance Corporation (FDIC) took over Heritage. On July 22, 2011, the FDIC filed a *UCC3 Financing Statement Amendment* in which the FDIC noted that Heritage's security interest

---

[3] Values are listed as: leaf and debris system $35,990.00; concrete curbing machinery $40,485.00; golf cart $9,500.00; John Deere mule $13,800.00; and trailer $6,800.00. This totals $126,175.00.

[4] Trial Exhibit P-4.

[5] Trial Exhibit P-11.

[6] Trial Exhibit P-5.

in the Equipment had been assigned to Trustmark.[7] Trustmark[8] filed a *UCC3 Financing Statement Amendment* on November 21, 2012, noting the continuation of its security interest.[9]

On May 8, 2014, the Debtor filed a petition for relief under Chapter 7 of the United States Bankruptcy Code. In his *Schedules* (Schedules), on *Schedule D – Creditors Holding Secured Claims*, the Debtor lists the following for Trustmark:

### SCHEDULE D – CREDITORS HOLDING SECURED CLAIMS

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See Instructions) | c o d e b t o r | h w j c | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | c o n t i n g e n t | u n l i q u i d a t e d | d i s p u t e d | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION IF ANY |
|---|---|---|---|---|---|---|---|---|
| Trustmark PO Box 291 Jackson, MS 39205 | | | Equipment - all sold or no longer in Debtor's possession except Generator/welder combo<br><br>Value $ 1,500.00 | | | | 37,791.00 | 36,291.00 |

*Schedule D – Creditors Holding Secured Claims,* Case No. 1401542EE, Dkt. #10, page 11 of 48, May 21, 2014.

---

[7]Trial Exhibit P-16.

[8]Since Trustmark acquired the Note and Security Agreement from Heritage, hereafter Heritage and Trustmark will be collectively referred to as Trustmark.

[9]Trial Exhibit P-17.

Trustmark filed its *Motion to Lift the Automatic Stay and to Direct Abandonment* (Dkt. #8) on May 19, 2014, seeking to have the stay lifted as to the Equipment List. Trustmark alleged that the Debtor owed it $35,305.11 on the Note. On June 19, 2014, the Court entered the *Order Lifting the Automatic Stay and Directing Abandonment* (Dkt. #18) of the equipment on the Equipment List.

Trustmark subsequently commenced a replevin action in the County Court of Madison County, Mississippi. On August 15, 2014, the parties entered into an *Agreed Final Judgment* granting Trustmark immediate possession of the equipment on the Equipment List.[10]

Trustmark commenced the above-styled adversary proceeding on July 29, 2014, with the filing of its *Complaint Objecting to Discharge Pursuant to 11 U.S.C. § 727 and Dischargeability Pursuant to 11 U.S.C. § 523* (Adv. Dkt. #2).[11] On March 23, 2015, the *Second Amended Complaint to Determine Dischargeability of Debt Pursuant to 11 U.S.C. § 523*[12] (Complaint) was filed. In the Complaint, Trustmark attached an email from the Debtor's attorney dated September 5, 2014, whereby the Debtor admitted that he had sold the E-Z Go Golf Cart in 2010, the John Deere Mule in 2009, and the Goose Kneck Trailer in 2008, but still had the Generator/Welder. Further, the Debtor admitted that he had never purchased the Janiak Leaf and Debris Management System or the

---

[10]Trial Exhibit P-13.

[11]Trustmark filed its first *Complaint Objecting to Discharge Pursuant to 11 U.S.C. § 727 and Dischargeability Pursuant to 11 U.S.C. § 523* (Adv. Dkt. #1) on July 29, 2014, however, the exhibits were not attached. That same day, Trustmark filed another complaint with the exhibits attached. These exhibits, however, did not have the Debtor's personal information redacted. Subsequently, an order was entered restricting from public access the second complaint filed on July 29, 2014, (*see* Adv. Dkt. #18).

[12]On March 5, 2015, the *Agreed Order Authorizing Amended Complaint* (Adv. Dkt. #40) was entered. The order states that the parties agreed to allow Trustmark to withdraw its claims objecting to the Debtor's discharge pursuant to § 727.

Tygar Concrete Curbing Machinery.[13] Trustmark alleges that its claim against the Debtor in the amount of $35,765.21 (as of July 29, 2014) plus accruing interest should be declared nondischargeable pursuant to 11 U.S.C. § 523(a)(6).[14]

On April 3, 2015, the Debtor filed his *Second Amended Answer* (Adv. Dkt. #46) (Answer). In his Answer, the Debtor denies that Trustmark loaned him the money to purchase equipment. The Debtor states that he informed Trustmark "that he did not intend to purchase certain collateral before and shortly after the loan was made in 2007."[15]

A trial was held on the Complaint and Answer. At the conclusion of the trial, the parties were instructed to submit a briefing schedule after the transcript was received. After the final brief was filed, the Court took the matter under advisement.

## CONCLUSIONS OF LAW

### I. Jurisdiction

This Court has jurisdiction of the subject matter and of the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(1) and (2)(I).

### II. § 523(a)(6)

#### A. Is the debt nondischargeable?

In the case at bar, Trustmark alleges that the Debtor willfully sold its collateral, therefore,

---

[13]Trial Exhibit P-14. (Also, *Seconded Amended Complaint,* Exhibit J).

[14]Hereinafter, all code sections refer to the Bankruptcy Code found at Title 11 of the United States Code unless specifically noted otherwise.

[15]*Second Amended Answer,* Adv. No. 1400053EE, Adv. Dkt. #46, unnumbered page 2, April 3, 2015.

its debt is nondischargeable pursuant to § 523(a)(6). Section 523(a)(6) provides as follows:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
>
> . . . .
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

11 U.S.C. § 523(a)(6).

In order to prevail under § 523(a)(6), a party must prove that the debt is nondischargeable by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 291, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991).

In the Court of Appeals for the Fifth Circuit, the case law pertaining to § 523(a)(6) has evolved over the years. An early case addressing § 523(a)(6) was *Kawaauhau v. Geiger,* 523 U.S. 57 (1998). In *Kawaauhau*, the United States Supreme Court stated that "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury." Further, "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Id.* at 64. The Supreme Court reiterated the policy considerations for confining § 523(a)(6) to circumstances that benefit "a typically more honest creditor." *Bullock v. BankChampaign,* — U.S. —, 133 S.Ct. 1754, 1761 (May 13, 2013).

In *Miller v. J.D. Abrams Inc. (In re Miller),* 156 F.3d 598 (5th Cir. 1998), the Fifth Circuit extended *Kawaauhau's* reasoning. The court in *Miller* refined the definition of willful and malicious and held that "either objective substantial certainty [of injury] or subjective motive [to injure] meets the Supreme Court's definition of 'willful. . .injury' in § 536(a)(6)." *Miller*, 156 F.3d at 603. The

*Miller* court rejected the definition of *malicious* to mean an act without just cause or excuse. Rather, the Fifth Circuit adopted an "implied malice standard" and held that *malicious* was an act done with the "actual intent to cause injury." *Id.* at 606 (citation omitted).

Several years later, the Fifth Circuit further addressed and refined its definition for willful and malicious in § 523(a)(6) in *Williams v. IBEW Local 520 (In re Williams)*, 337 F.3d 504 (5th Cir. 2003):

> The test for willful and malicious injury under Section 523(a)(6), thus, is condensed into a single inquiry of whether there exists "either an objective substantial certainty of harm or a subjective motive to cause harm" on the part of the debtor. *[Miller,* 156 F.3d at 606]. *See also Texas v. Walker,* 142 F.3d 813, 823 (5th Cir.1998) (stating "'for willfulness and malice to prevent discharge under Section 523(a)(6), the debtor must have intended the actual injury that resulted.' . . . 'Intent to injure may be established by showing that the debtor intentionally took action that necessarily caused, or was substantially certain to cause, the injury.'")(citing *In re Delaney,* 97 F.3d 800, 802 (5th Cir.1996)).
>
> . . . .
>
> The holdings in *Kawaauhau, Miller,* and *Walker* indicate that a debtor must commit an intentional or substantially certain injury in order to be deprived of a discharge. A debt is not excepted from discharge if the debtor has committed a willful or knowing act. The dischargeability of [the debtor's] two debts to the [creditor], therefore, depends upon the intentional or certain nature of the injury [the debtor] inflicted upon the [creditor.]

*In re Williams*, 337 F.3d at 509.

Consequently, under Fifth Circuit jurisprudence, in determining whether an injury is *willful and malicious,* a debtor must have acted with "an objective substantial certainty of harm"[16] (objective test) or a debtor must have acted with "a subjective motive to cause harm"[17] (subjective

---

[16]*Miller*, 156 F.3d at 606.

[17]*Id.*

test).

In *Randall v. Atkins (In re Atkins),* 458 B.R. 858 (Bankr. W.D. Tex. 2011), the debtor borrowed money from a creditor to purchase 337 scooters. The debtor received the funds to purchase the 337 scooters, but he only purchased 290 scooters. The creditor objected to the debtor's discharge under § 727 and § 523(a)(6). In applying the objective test, the court found that the creditor failed to produce any evidence to show that the debtor intended to harm the creditor. Under the subjective test, however, the court found that "[the debtor] should have known that the failure to purchase all of the scooters and/or retain the loan proceeds placed the [creditor] at risk." *Atkins,* 458 B.R. at 880.

Similar to the debtor in *Atkins,* the Debtor's testimony at trial shows that his conduct was not willful and malicious under the objective test. Trustmark failed to produce any evidence to show that the Debtor intended to harm Trustmark. The Debtor testified that he intended to repay the loan in full, and the Court found this testimony to be credible. Further, the Court notes that the Debtor did pay down a substantial portion of the original note, but the Debtor's economic situation was such that he was unable to pay the entire balance owed.

Under the subjective test, however, the Court finds that Trustmark has shown that the Debtor acted deliberately and intentionally with knowing disregard of Trustmark's rights. At trial, the Debtor testified that he signed the Note and Security Agreement and that the purpose of the loan was for the purchase of equipment. (Trial Tr. at 24-25). The Debtor also acknowledged that it was his handwriting on the Equipment List introduced at trial as Exhibit P-7 which shows a total value of $126,175.00 for the equipment he was seeking to purchase and which was to serve as collateral for the Note. The Debtor further testified that at the time he signed the Note and Security Agreement,

he had already purchased all of the equipment except the leaf and debris equipment and the concrete curbing machinery. (Trial Tr. at 25-31).

When the Debtor entered into the Loan Modification, the Debtor testified that the same Equipment List that was attached to the Security Agreement was attached to the Loan Modification and that he understood that the Equipment List was suppose to secure the Loan Modification. (Trial Tr. at 33). The Debtor also certified that nothing had changed from the time he had entered into the Note. Trial Exhibit P-5.

But, contrary to what he led the bank to believe when entering into the Loan Modification, the Debtor had never purchased the concrete curbing machinery or the leaf and debris system. Further, the Debtor testified that when he entered into the Loan Modification, he had already sold the golf cart, trailer, and the mule, but he did not disclose this to Trustmark. (Trial Tr. at 33-36). At the time of the Loan Modification, the only collateral the Debtor still had in his possession was the welder, which the bank eventually picked up and sold. (Trial Tr. at 36).

When questioned about his understanding of the purpose of the loan and the reasons Trustmark wanted a security interest in the collateral, the Debtor testified:

> Q. And you understand, don't you, that when you state that the purpose of the loan is to buy equipment that you're telling the bank that you're going to use those loan proceeds to buy equipment, you understand that, right?
>
> A. Yes, sir.
>
> Q. And you also understand that the bank takes that equipment that you're going to buy as collateral to pay your loan back in case you don't pay it, right, you understand that?
>
> A. Yes, sir.
>
> Q. And isn't it fair to say that that collateral, the reason the bank gets that is to protect itself in case you don't pay it back?

> A. Yes, sir.
>
> Q. And you know and you knew at the time, right, that if you didn't buy this equipment that was to serve as the collateral the bank would not have that protection in case you didn't pay the loan, right?
>
> A. That's correct. They had my word though.

(Trial Tr. at 37-38).

Consequently, the Court finds that the Debtor should have known that his failure to purchase the leaf and debris system and the concrete curbing machinery and/or retaining the proceeds from the loan would put Trustmark at risk of not being repaid. Further, the Debtor not only failed to honor the terms of the Note, but when he entered into the Loan Modification, he continued to represent to Trustmark that he had purchased the leaf and debris system and the concrete curbing machinery and that he still had all of the equipment on the Equipment List.

The Court does not find credible the Debtor's testimony that shortly after he signed the Note, he informed Trustmark that he did not purchase the leaf and debris system and the concrete curbing machinery.[18] Nor does the Court find credible his testimony that at the time he entered into the Loan Modification, he informed Trustmark that he had already disposed of all of the other collateral except the welder.[19] Instead the Court finds to be the more credible testimony that of the loan officer who testified that the bank would never have made the loan in the first place if it had known that the Debtor was not going to purchase the leaf and debris system and the concrete curbing machinery. (Trial Tr. at 12).

Consequently, the Court finds that the Debtor was aware that his actions were "at least

---

[18] Trial Tr. at. 47-48.

[19] Trial Tr. at 35-37.

substantially certain to result in injury to"[20] Trustmark, and therefore, the Court finds that Trustmark has met the requirements of § 523(a)(6) to have the debt declared nondischargeable.

### B. What are Trustmark's damages?

Having found that the Debtor's indebtedness to Trustmark is nondischargeable under § 523(a)(6), the Court must determine the amount of Trustmark's damages. Trustmark argues that the Debtor's failure to purchase the leaf and debris system and the concrete curbing machinery was a conversion of the proceeds of the Note, and therefore, Trustmark is entitled to a judgment for the unpaid indebtedness.[21] The Debtor contends that *Friendly Fin. Service Mid-City, Inc. v. Modicue (In re Modicue),* 926 F.2d 452 (5th Cir. 1991) controls, and therefore, the appropriate measure of damages is the value of the collateral when the Debtor disposed of the equipment.[22]

The Court agrees with the Debtor that in the Fifth Circuit, in order to determine the appropriate damages under § 523(a)(6), *Modicue* controls. In *Modicue*, the creditor loaned the debtor money, and in exchange, the debtor gave the creditor a security interest in certain collateral. Subsequently, the debtor sold the collateral at a rummage sale without informing the creditor and without tendering the proceeds from the sales to the creditor. The Fifth Circuit held that "the wrongful sale or conversion of encumbered property by the debtor"[23] was a willful and malicious injury as contemplated under § 523(a)(6). The issue before the Fifth Circuit was what is the

---

[20] *Miller*, 156 F.3d at 606. *See also Franklin Bank v. Barnes (In re Barnes),* 369 B.R. 298, 306-07 (Bankr. W.D. Tex. 2007).

[21] *Trustmark National Bank's Reply to Defendant's, Kenneth Harlan Jenkins, Trial Brief (Doc. No. 59)*, Adv. No. 1400053EE, Adv. Dkt. #61, p. 6, Sept. 4, 2015.

[22] *Defendant's Brief*, Adv. No. 1400053EE, Adv. Dkt. #59, p. 8, August 13, 2015.

[23] *Modicue,* 926 F.2d at 453 (citation omitted).

appropriate measure of damages under § 523(a)(6).

In finding that the appropriate measure of damages is the fair market value at the time the property was sold, the Fifth Circuit found:

> Section 523(a)(6) is based on tort principles rather than contract. *In re Howard,* 6 B.R. at 258, Collier on Bankruptcy 523.16. It is designed to compensate the injured party for the injury suffered while not allowing the debtor to escape liability for a "willfull and malicious" injury by resort to the bankruptcy laws. Thus, the appropriate measure for non-dischargeability under § 523(a)(6) is an amount equal to the injury caused by the debtor rather than any other sum owed by the debtor on a contractual basis. In this case, the injury to Friendly is the loss of the collateral securing the Modicue's indebtedness to which Friendly would have had priority upon liquidation of the bankruptcy estate. Therefore, under § 523(a)(6), Friendly is entitled to the value of the collateral denied it by the Modicue's wrongful actions. Any other construction of § 523(a)(6) would allow Friendly, an under-secured creditor, to improve its position in the bankruptcy setting because of the debtor's wrongful conduct. Such a result is contrary to the equities and policy goals embodied in the Bankruptcy Code. *See, In re Howard,* 6 B.R. at 258.

*Modicue*, 926 F.2d at 453.

The only evidence offered as to the value of the collateral the Debtor had disposed of was the testimony of the Debtor. The Debtor testified that he sold the golf cart for $1,500.00 (Trial Tr. at 34); sold the trailer for between $1,100.00 to $1,200.00 (Trial Tr. at 34); and sold the John Deere mule for between $400.00 to $500.00 (Trial Tr. at 36). Applying *Modicue*, the Court finds that Trustmark should be granted a nondischargeable judgment for the value of the collateral the Debtor disposed of in the following amounts:

| | |
|---|---|
| golf cart | $1,500.00 |
| trailer | $1,150.00 |
| John Deere mule | $ 450.00 |
| Total: | $3,100.00 |

As for the two pieces of equipment the Debtor never purchased with the loan proceeds, the leaf and debris system and the concrete curbing machinery, Trustmark alleges that its damages

should be the purchase price the Debtor listed for the two pieces of equipment on Trial Exhibit P-7. In support of this position, Trustmark cites the case of *Atkins*.[24]

The Court finds that *Atkins* is distinguishable from the case at bar. The debtor in *Atkins* did misuse the proceeds of a loan by failing to purchase all of the scooters he told the bank he was going to purchase, however, there is no indication that the *Atkins'* court applied *Modicue* to determine the amount of damages. Unlike the case at bar, the *Atkins* court found that the debt was nondischargeable not only under § 523(a)(6), but also under § 523(a)(4), § 727(a)(2), § 727(a)(5) and § 727(a)(7). In calculating damages, the *Atkins* court was not limited by *Modicue* since *Modicue* only applies to § 523(a)(6). Instead, the *Atkins'* court denied the discharge and found the outstanding balance owed by the debtor to be nondischargeable. Consequently, the Court finds that *Atkins* does not stand for the proposition that if a debtor fails to purchase collateral, damages under § 523(a)(6) would be the purchase price of the collateral the debtor failed to purchase.

The parties do not cite any cases with the same fact scenario as the case at bar–neither party submitted cases to the Court where the amount of damages under § 523(a)(6) was determined to be the purchase price of collateral a debtor failed to purchase. In its research, the Court has not found any cases on point either.

The Court considered the testimony of the Debtor where he: (1) admitted that he knew that the bank would not have made the initial loan if it had known he was not going to purchase all of the collateral,[25] and (2) admitted that at the time of the Loan Modification, he gave Trustmark the

---

[24]*Supra* p. 10.

[25]Trial Tr. at 12.

Equipment List from the original Note and led Trustmark to believe that nothing had changed,[26] in finding that the Debtor should have known that his actions of failing to purchase collateral and of disposing of the collateral were certain to result in an injury to Trustmark. Applying *Modicue* to the unique facts of this case, the Court finds that Trustmark's damages should be based not only on the value of the collateral the Debtor sold but also on the purchase price of "the collateral denied it by the [debtor's] wrongful actions"[27] of failing to purchase the collateral which was to be security for the Note.

According to Trial Exhibit P-7 the purchase price of the two pieces of collateral the Debtor failed to purchase totaled $76,475.00. Adding $76,475.00 to the value of the collateral sold by the Debtor, $3,100.00, the Court finds that the amount of damages under *Modicue* would be $79,575.00. The Debtor has, however, paid down the Note and only owes Trustmark $35,765.21. Consequently, the Court finds that pursuant to *Modicue*, Trustmark is entitled to a nondischargeable judgment under § 523(a)(6) in the total amount of $35,765.21.

## CONCLUSION

In the Fifth Circuit, it is clear the wrongful sale or conversion by a debtor of encumbered property is a willful and malicious injury as contemplated by § 523(a)(6). *Modicue*, 926 F.2d at 453. The Debtor testified that he disposed of the golf cart, trailer and John Deere mule without notifying Trustmark or turning the entire proceeds over to Trustmark. Consequently, Trustmark has met its burden under § 523(a)(6) as to this collateral.

The Debtor testified that he understood that the purpose of the loan was to allow him to

---

[26]Trial Tr. at 33 to 39.

[27]*Modicue,* 926 F.2d at 453.

purchase equipment for his business which would be collateral for the Note. But, the Debtor never purchased the leaf and debris system or the concrete curbing machinery. The Court finds that the Debtor knew or should have known that his actions were "at least substantially certain to result in injury to"[28] to Trustmark. Consequently, the Court finds that Trustmark has met its burden under § 523(a)(6) as to the two pieces of equipment the Debtor failed to purchase.

Under *Modicue*, the appropriate measure of damages under § 523(a)(6) is the value of the collateral Trustmark was denied by the Debtor's wrongful conduct of selling its collateral and of converting the proceeds of the loan by failing to purchase the equipment he said he was purchasing. The Debtor received $3,100.00 when he disposed of the golf cart, trailer and John Deere mule. As for the leaf and debris system and the concrete curbing machinery, the Court finds that the amount of the injury to Trustmark is $76,475.00–the stated purchase price of the two pieces of collateral. Consequently, the injury to Trustmark totals $79,575.00.

Considering that the total amount owed to Trustmark is considerably less than $79,475.00, the Court finds that Trustmark is entitled to a nondischargeable judgment in the amount $35,765.21– the balance of the loan as of July 29, 2014.

To the extent the Court has not addressed any of the parties' arguments or positions, it has considered them and determined that they would not alter the result.

A separate judgment consistent with this Opinion will be entered in accordance with Rules 9014 and 9021 of the Federal Rules of Bankruptcy Procedure.

## ##END OF OPINION##

---

[28]*Miller*, 156 F.3d at 606.